UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BRANDYN GAYLER,<br><br>                            Plaintiff,<br><br>    v.<br><br>STATE OF NEVADA, *et al.*,<br><br>                           Defendants. | Case No. 2:17-cv-00431-JCM-VCF<br><br>ORDER |

       Presently before the court is defendants Jay Barth, James Dzurenda, James Cox, Ryan Hesler, Jerry Howell, Jennifer Nash, Duane Wilson, Brian Williams, Benjamin Estill, and Bethany Yeats (collectively, "defendants") motion for summary judgment. (ECF No. 31). Plaintiff Brandyn Gayler ("Gayler") responded in opposition (ECF No. 41), to which defendants replied (ECF No. 51).

       Also before the court is Gayler's motion to file exhibits under seal. (ECF No. 43). Defendants responded in opposition. (ECF No. 48). Gayler did not reply and the time to do so has passed.

**I.    BACKGROUND**

       This matter concerns the allegedly inadequate quality and quantity of food that High Desert State Prison ("HDSP") general population ("gen-pop") inmates prepared for protective segregation ("p-seg") inmates, including Gayler, between 2015 and 2017.

Plaintiff originally filed his complaint on February 8, 2017. (ECF No. 1). In its screening orders (ECF Nos. 5, 8), the court dismissed all but three of Gayler's claims against all but fourteen defendants.[1] Those claims are supported by the allegations contained in Gayler's first amended complaint. (ECF No. 7).

Claim one alleges Fourteenth Amendment equal protection violations by defendants Cox, Dzurenda, Williams, Nash, Howell, and Wilson regarding allegedly contaminated food. Claim two alleges Eighth Amendment violations by those same defendants regarding allegedly inadequate quality and quantity of food. Claim three alleges a First Amendment violation by defendants Barth, Hesler, Estill, and Yeats regarding their alleged retaliation against Gayler.

Defendants now move for summary judgment on all of Gayler's remaining claims. (ECF No. 31).

## II.   LEGAL STANDARD

Summary judgment is proper when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[2] Fed. R. Civ. P. 56(a). The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986), and to avoid unnecessary trials on undisputed facts. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

When the moving party bears the burden of proof on a claim or defense, it must produce evidence "which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the

---

[1] However, plaintiff timely served only these ten movant defendants. (ECF Nos. 14, 15, 38).

[2] The court can consider information in an inadmissible form at summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

nonmoving party bears the burden of proof on a claim or defense, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of [proof] at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party satisfies its initial burden, the burden then shifts to the party opposing summary judgment to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). An issue is "genuine" if there is an adequate evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a fact is "material" if it could affect the outcome under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

"When a pro se litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct." *Matthews v. Reubart*, No. 3:19-CV-0221-MMD-CLB, 2021 WL 4899478, at *3 (D. Nev. Sept. 29, 2021), *report and recommendation adopted*, No. 3:19-cv-00221MMDCLB, 2021 WL 4900972 (D. Nev. Oct. 20, 2021) (citing *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004)).

The opposing party does not have to conclusively establish an issue of material fact in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). But it must go beyond the pleadings and designate "specific facts" in the evidentiary record that show "there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. In other words, the opposing party must show that a judge or jury has to resolve the parties' differing versions of the truth. *T.W. Elec. Serv.*, 809 F.2d at 630.

The court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Kaiser*

*Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).  The court's role is not to weigh the evidence but to determine whether a genuine dispute exists for trial.  *Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted.  *See id.* at 249–50.

### III. DISCUSSION

Gayler brings all three of his remaining claims under 42 U.S.C. § 1983 ("Section 1983"), which "provides a remedy to individuals whose constitutional rights have been violated by persons acting under color of state law."  *Caballero v. Concord*, 956 F.2d 204, 206 (9th Cir. 1992).  For each Section 1983 claim, Gayler must show that 1) defendants acted under color of state law while committing the conduct at issue, and 2) the conduct deprived Gayler of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C. § 1983; *Shah v. City of Los Angeles*, 797 F.2d 743, 746 (9th Cir. 1986).

Defendants do not dispute that they acted under color of state law during the conduct at issue.  (*See* ECF No. 31 at 9).  Instead, defendants argue that they are entitled to summary judgment because 1) the applicable statute of limitations bars Gayler's claims for conduct occurring earlier than February 8, 2015; 2) Gayler failed to exhaust his retaliation claim against defendants Hesler, Barth, and Estill; 3) Gayler is not a member of a protected class for his equal protection claim; 4) defendants did not personally participate in the alleged Eighth Amendment violations; 5) Gayler fails to show that defendant Yeats took any adverse action against him; and, in the alternative, 6) defendants are entitled to qualified immunity.

1. The statute of limitations bars Gayler's pre-February 8, 2015, allegations

Defendants argue that the statute of limitations bars all of Gayler's grievances for events that occurred more than two years before he first filed this action on February 8, 2017.  (ECF No. 31 at 8).  Gayler does not dispute this issue.

The court agrees with defendants and strikes from consideration all Gayler's allegations for individual instances of conduct occurring before February 8, 2015, two years before the date Gayler filed his first complaint. *See Owens v. Okure*, 488 U.S. 235, 235 (1989); NEV. REV. STAT. 11.190(4)(e).

2. Gayler failed to exhaust his retaliation claim against Hesler, Barth, and Estill

The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (the "PLRA"), requires prisoners to exhaust available administrative remedies before filing Section 1983 actions in federal court. *See* 42 U.S.C. § 1997e(a). Exhaustion is required under this provision regardless of the type of relief sought and the type of relief available through administrative procedures. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Sapp v. Kimbrell*, 623 F.3d 813, 821 (9th Cir. 2010); *Harvey v. Jordan*, 605 F.3d 681, 683–84 (9th Cir. 2010). Therefore, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court[.]" *Woodford*, 548 U.S. at 88; *see also Sapp*, 623 F.3d at 621–27.

Defendants argue that Gayler failed to exhaust his retaliation claim against defendants Hesler, Barth, and Estill. Gayler argues that he did exhaust his claim when he filed "grievance 20063011275." (ECF No. 34 at 112). However, Gayler's attached copy of that grievance (ECF No. 47 at 336–46) shows that Gayler took it only to the first level of appeal.

The Nevada Department of Corrections' ("NDOC") administrative regulation ("AR") 740 provides that, at HDSP, inmates must first file an informal grievance assigned to a caseworker, then can appeal a rejected grievance to the "first level." (ECF No. 33-1 at 9–22, 100, 103). If the grievance is again denied at the first level, inmates can then appeal to the "second level," which ends the formal grievance process. (*Id.* at 104). Thus, a grievance is exhausted once an inmate appeals to the

second level and is again denied.

Accordingly, Gayler's retaliation claim against defendants Hesler, Barth, and Estill, is dismissed for Gayler's failure to exhaust.[3]

### 3. Gayler's equal protection claim fails because he is not a member of a protected class

The court determined that Gayler's equal protection claim survived screening on a "class of one" theory. (ECF No. 8 at 8–9). The court instructed Gayler that to state a "class-of-one" equal protection claim, Gayler must identify the group of individuals with whom he is similarly situated, identify some allegedly intentional and disparate treatment, and show that there was no rational basis for the different treatment. (*Id.* at 8); *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

Here, Gayler attempted to identify a group of individuals he is similarly situated to by classifying himself as a "class-two" inmate who does not qualify for general population housing at his prison. According to Gayler, class-two inmates are those who committed "taboo" crimes like sex crimes as well as those who are disfavored by "class-one" inmates—those inmates who are permitted to enter general population housing—due to legal conduct like testifying for the government and dropping out of gangs. (ECF No. 41 at 5–6). Gayler claims that he is similarly situated to the "class-two" inmates at other prisons, like the Lovelock Correctional Center ("LCC") and the Warm Springs Correctional Center ("WSCC"). (ECF No. 41 at 32).

Gayler alleges that defendants intentionally treated HDSP's class-two inmates disparately from their class-two counterparts at LCC and WSCC. According to Gayler, LCC and WSCC require that class-two inmates prepare the food for other class-two inmates rather than allow class-one inmates to prepare food for all inmates. Gayler argues that this disparity shows defendants violated Gayler's right to equal protection because it subjects HDSP's class-two inmates to inadequate quality and quantity of

---

[3] Gayler exhausted the remainder of his claims. (*See* ECF No. 42 at 153 (retaliation against Yeats), 178 and 189 (inadequate quantities of food), 195 (contaminated food)).

food without a rational basis.

Yet, Gayler substantiates his disparate treatment claims with evidence that other class-two inmates in HDSP received similar food as he did. (ECF No. 41 at 32). Gayler is not a class of one if he received the same treatment as all the other p-seg inmates at HDSP. Nor can Gayler state an equal protection claim merely by dividing all persons not injured into one class and alleging that they received better treatment than he did. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). Thus, Gayler's own conduct refutes a finding that he is a "class of one."

Further, Gayler fails to show that there was no rational basis for defendants' decision to allow gen-pop inmates to prepare the food for all of HDSP's inmates. As will be discussed below, HDSP has several policies in place to ensure that only the best-behaved inmates are permitted to work in the culinary department and to ensure that no food is contaminated before being served to any inmates. *Supra* Part III.4. As Gayler fails to identify a policy pointing to the contrary, his equal protection claim would fail even if he was a class of one.

Finally, even if the court were to liberally construe Gayler's complaint to assert a new protected class, Gayler fails to establish that his proposed class of "class-two" inmates is a protected class. His entire basis for this classification is that he was subject to different housing than other inmates, but he supports this classification by arguing that gen-pop inmates view p-seg inmates harshly for independent, subjective reasons. There is no class for protected segregation inmates based on discrimination from gen-pop inmates.

Accordingly, Gayler's equal protection claim fails as a matter of law.

4. <u>Gayler's Eighth Amendment claim fails as no defendant personally participated in unconstitutional conduct</u>

To challenge the conditions of confinement under the Eighth Amendment, a plaintiff must meet both an objective and subjective test. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). The objective prong requires a showing that the deprivation was sufficiently serious to form the basis for an Eighth Amendment

violation. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Here, Gayler provides his own affidavits, inmate grievances, journal entries, and the declarations and affidavits of other inmates alleging that HDSP served inadequate quality and quantity of food to p-seg inmates, including Gayler, against HDSP's policies. (ECF Nos. 42, 44, 46, 47). According to the affidavits, p-seg inmates' food was often contaminated with human waste, semen, and insects, and was often served in portions smaller than what HDSP's menu called for. Further, the evidence shows that HDSP officers often refused inmates' requests to correct or substitute the inadequate food.

Assuming all facts and drawing all inferences in favor of Gayler, these deprivations of Gayler's right to receive adequate food are sufficiently serious to satisfy the objective prong of this analysis. *Cf. LeMaire*, 12 F.3d at 1456.

As to the subjective prong, inmates must establish prison officials' "deliberate indifference" to the unconstitutional conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the inmate must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837. Mere negligence is insufficient to show a violation of the Eighth Amendment. *Id.* at 835–36.

Deliberate indifference generally requires a showing that a defendant's actions or inactions caused the plaintiff harm. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). However, an inmate also establishes a cause of action under the Eighth Amendment by showing that the official, with deliberate indifference, exposed the inmate to conditions that pose an unreasonable risk of serious damage to his future

health. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). When the issue is exposure to a risk of future harm, deliberate indifference is assessed not based on a prison official's awareness of current harm, but instead is assessed based on a prison official's awareness of a serious risk of substantial harm. *Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014).

Here, Gayler does not allege that any defendant personally underserved or contaminated p-seg inmates' food. Rather, Gayler argues that defendants were deliberately indifferent to the risk posed by allowing gen-pop inmates to prepare food for p-seg inmates because gen-pop inmates underserved and contaminated p-seg inmates' food while working under the supervision of HDSP's culinary staff.

The Ninth Circuit has unambiguously held that, "[t]here is no respondeat superior liability under [Section] 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor [personally] participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.* "A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor." *Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011).

Thus, Gayler's deliberate indifference claim survives summary judgment against only each defendant that Gayler shows had "knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr*, 652 F.3d at 1207.

*A. Defendants Cox, Dzurenda, Williams, Nash, and Howell*

Defendants argue that defendants Cox, Dzurenda, Williams, Nash, and Howell did not have knowledge and acquiescence in the alleged deprivation of Gayler's Eighth Amendment rights because they did not directly deal with food service and did not subjectively perceive a substantial risk to p-seg inmates' health. Gayler argues that they did have knowledge both directly through the many inmate grievances about the food and indirectly through HDSP's policies segregating gen-pop inmates from p-

1   seg inmates.

2        Gayler first argues that these defendants had knowledge because they or their
3   offices responded to inmate grievances about the food.  (ECF No. 41 at 21).  As to
4   directors Cox and Dzurenda, Gayler speculates that because their deputies
5   responded to inmate grievances, they must have been aware of the grievances.  Yet,
6   Gayler provides no evidence showing that directors are advised of every prisoner
7   grievance that passes through their offices, nor evidence showing that directors Cox
8   and Dzurenda were personally aware of the grievances.

9        As to warden Williams and associate wardens Nash and Howell, Gayler argues
10  that they were aware because they personally responded to Gayler's grievances
11  about the food.  Gayler provides evidence that warden Williams responded to Gayler's
12  grievances about food portions (ECF No. 47 at 382, 514); that Howell responded to
13  Gayler's informal grievance alleging the same quality and quantity of food issues he
14  alleges in this matter (ECF No. 47 at 418–436); and that Nash rejected one of his
15  grievances about the food (ECF No. 47 at 466).

16       While these defendants or their deputies may have responded to some
17  grievances, that alone is not enough to show that they subjectively knew about and
18  acquiesced their subordinates' ignorance of the risks to p-seg inmates' food.  Prison
19  officials are not required to initiate an investigation into every inmate grievance filed
20  in their prison.  Further, "[h]olding a prison official personally responsible for damages
21  simply because he is familiar with a prisoner's circumstances through direct
22  communications with the prisoner and through communications with his subordinates
23  [or caseworkers] is such a broad theory of liability that it is inconsistent with the
24  personal responsibility requirement for assessing damages against public officials in
25  a 42 U.S.C. § 1983 suit."  *May v. Williams*, No. 2:10-cv-576-GMN-LRL, 2012 WL
26  1155390, at *3 (D. Nev. Apr. 4, 2012) (citing *Crowder v. Lash*, 687 F.2d 996, 1005-
27  1006 (7th Cir. 1982)).

28  . . .

Accordingly, as Gayler fails to provide evidence showing that defendants or their offices did anything more than simply respond to his grievances, he fails to show the level of personal participation required to sustain his Section 1983 action.

Gayler next argues that these defendants had knowledge of the violative conduct because they implemented and enforced the policies which allowed the risk of contaminated and inadequate quantities of food to reach p-seg inmates. Specifically, Gayler argues that they were deliberately indifferent to the risk posed by operating procedure ("OP") 269's allowing gen-pop inmates to prepare p-seg inmates' food in spite of administrative regulation ("AR") 509's prohibiting gen-pop inmates from physically visiting p-seg inmates because of the known danger gen-pop inmates pose to p-seg inmates' safety. (ECF No. 21). Gayler is mistaken.

The procedures in place for culinary work at the time of Gayler's grievances imposed strict measures to protect p-seg inmates from food contamination or inadequate quantities of food. Under OP 503 and 700, a subcommittee consisting of a unit caseworker and unit officer assigned an inmate to culinary duty only if the inmate had been discipline-free for 90 days and had not been found guilty of any major disciplinary action within the preceding six months. (ECF No. 34 at 8, 99).

Additionally, under OP 269, any culinary staff member could remove an inmate worker from culinary for "justified disciplinary reasons, i.e. . . . unsanitary habits . . . ." (ECF No. 33 at 13). If an inmate was removed from culinary work for disciplinary reasons, he could not return to culinary for six months. (*Id.*). OP 269 also provided safety measure to prevent the contamination of food by requiring all inmate workers entering the culinary area to submit to an unclothed body search. (ECF No. 33 at 18).

OP 269 further provided processes for inmates to dispute the quality and quantity of food they receive. (ECF No. 33 at 15–17). Inmates could complain to their unit officer, who then contacted the shift supervisor to evaluate the discrepancy. If the shift supervisor determined the meal was questionable, he or she then contacted the institutional cook on duty to make a final determination whether to serve or replace

the food complained of.  If any food was unfit for human consumption, notice was immediately given to the food service manager and shift supervisor and given within a day to the warden.  (ECF No. 33 at 17).

Defendants Cox, Dzurenda, Williams, Nash, and Howell cannot be said to be deliberately indifferent to inmate safety and nourishment from their reliance on these procedures.  Even if the court determined that this reliance constituted deliberate indifference due to the ignorance of AR 509's restriction on gen-pop inmates physically visiting p-seg inmates, these defendants would be entitled to qualified immunity because Gayler fails to show that clearly established law exists to the extent any reasonable prison official would understand that allowing gen-pop inmates to prepare p-seg inmate's food violates the p-seg inmates' Eighth Amendment right to be free from contaminated food.

Accordingly, Gayler's Eighth Amendment claim fails as a matter of law against defendants Cox, Dzurenda, Williams, Nash, and Howell.

*B.  Defendant Wilson*

As to defendant Wilson, Gayler fails to show that genuine questions of material fact exist as to whether Wilson was deliberately indifferent to p-seg inmate's risk of receiving inadequate quality and quantity of food.

At all times relevant to this matter, Wilson was HDSP's food service manager.  Under administrative regulation ("AR") 269 and OP 269, Wilson had "total responsibility for the day-to-day operation of the [c]ulinary and food service operations," and was tasked with supervising "all inmates working in the food service division."  (*See* ECF No. 31 at 4, 10, 14).

Gayler argues that Wilson must have subjectively known of and ignored the risk of contamination food in his kitchen because he saw several inmate grievances concerning contaminated and inadequate portions of food.  Gayler further argues that Wilson acquiesced in violations of the administrative procedures put in place to prevent contamination from happening because an officer under Wilson's supervision

once instructed inmates to serve food which was scooped off the floor.

Yet, none of Gayler's allegations show that Wilson personally acted or subjectively recognized a risk of inadequate quality and quantity of food served out of his kitchen. As discussed above, merely responding to a grievance does not constitute deliberate indifference. Further, just because Wilson was responsible for the kitchen does not mean that he was responsible for failing to change the policy allowing gen-pop workers to prepare p-seg inmate's food. Thus, Gayler's allegations against Wilson arise not to a deliberate indifference claim, but a negligence claim.

Gayler fails to provide any evidence that Wilson saw inmates contaminate food, knowingly served contaminated food, personally rejected any inmate's request to replace or substitute contaminated or inadequate portions of food, or intentionally underserved p-seg inmates. Gayler's allegations all concern his unit's supervising officers and lieutenants denying p-seg inmate's requests to replace food. Absent some semblance of personal participation, Wilson is not liable for allegedly negligent behavior in his role as food service manager.

Accordingly, Gayler's deliberate indifference claim against Wilson fails as a matter of law.

5. <u>Gayler's retaliation claim fails against Yeats because he suffered no harm</u>

Defendants argue that Yeats is entitled to summary judgment on Gayler's third claim because Gayler presents no evidence that Yeats retaliated. Gayler argues that Yeat's retaliation is shown by Gayler's grievance regarding Yeats moving him to another cell. (ECF No. 42 at 153).

According to Gayler, Yeats transferred him to a new unit where he was not allowed to work in the kitchen within an hour of meeting with Gayler to discuss a grievance Gayler filed regarding officer retaliation for Gayler's complaining about the quantity of his food. Defendants argue that the transfer was not related to the grievances, and that a transfer alone is not enough to support a retaliation claim because it did not affect Gayler's rights or send him to a new prison.

Gayler's complaint that the transfer constitutes retaliation lacks merit.  Due to HDSP's then active policies, Gayler was not permitted to work in the culinary department regardless of Yeats's opinion on the matter.  Even if Yeats transferred Gayler after Gayler's complaints of retaliation, Yeats merely transferred Gayler to another p-seg unit with similar living conditions as his prior unit.  Gayler does not even contend that the transfers resulted in any harm, just that the only reason for the transfer must have been to cause Gayler fear that if he continued to pursue grievances, he may eventually end up housed with an inmate he was not compatible with.  Speculative future harm does not sustain a retaliation claim.

Accordingly, Gayler's third claim fails as a matter of law.

6.  Gayler fails to show compelling reasons to seal his exhibits

There is a strong presumption in favor of public access to judicial records.  *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mutual Auto. Insurance Company*, 331 F.3d 1122, 1135 (9th Cir. 2003)).  "[T]he public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding."  *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) (Posner, J.).

To overcome this presumption, the party seeking to seal a judicial record must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure."  *Kamakana*, 447 F.3d at 1178–79 (internal quotation marks and citation omitted).  If the court seals a judicial record, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture."  *Id.* 447 F.3d at 1179 (internal quotation marks omitted); *see also* LR IA 10-5 (outlining the procedure to seal judicial records in this district).

. . .

Gayler argues that sealing Appendix I (ECF Nos. 42, 47[4]) is necessary to ensure that the witnesses whose declarations are contained within Appendix I do not suffer retaliation for their participation in this matter. According to Gayler, "some of the [d]efendants are capable of retaliating . . . ." (ECF No. 43 at 1).

Gayler's arguments are neither compelling nor supported by specific factual findings. The entirely speculative retaliation—which itself amounts merely to potential cell transfers and loss of employment status—does not overcome the strong presumption in favor of public access to judicial records. Accordingly, the court DENIES Gayler's motion to seal. (ECF No. 43).

**7.  CONCLUSION**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 31) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Gayler's motion to seal (ECF No. 43) is DENIED.

The clerk is instructed to enter judgment in favor of defendants Jay Barth, James Dzurenda, James Cox, Ryan Hesler, Jerry Howell, Jennifer Nash, Duane Wilson, Brian Williams, Benjamin Estill, and Bethany Yeats and close this case.

DATED November 29, 2021.

_____
UNITED STATES DISTRICT JUDGE

---

[4] Gayler refiled Appendix I at ECF No. 47 due to a filing error with ECF No. 42. As both documents contain information Gayler moves to seal, the court reads Gayler's motion as seeking to seal both.